**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-00227-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| DEARRL DIGGS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is the Report and Recommendation, (ECF No. 33), entered by Magistrate Judge Cam Ferenbach on November 14, 2016, granting Defendant Dearrl Diggs's ("Defendant's") Motion to Suppress, (ECF No. 17). The Government timely filed its Objection, (ECF No. 37), to the Report and Recommendation, and Defendant timely filed a Response, (ECF No. 38).

**I.       BACKGROUND**

On July 26, 2016, an Indictment, (ECF No. 1), was entered charging Defendant with Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment at 1–2). The Indictment issued following Defendant's arrest by Las Vegas Metropolitan Police Department ("LVMPD") Officers Spurling and Donegan. (R. & R. 1:13–17, ECF No. 33). Defendant was a passenger in a vehicle that was pulled over by Officers Spurling and Donegan for failing to make a complete stop at a stop sign. (*Id.* 1:13–14). While Officer Spurling was talking to the driver of the vehicle, Officer Donegan asked Defendant for identification; Defendant at first gave the officer a false name, and then later identified himself as Dearrl Diggs. (*Id.* 2:3–9). Officer Spurling approached Defendant and asked if there were any guns or weed in the car, to which Defendant replied no. (*Id.* 2:12–16). Because Officer

1  Spurling had already recovered a baggie in a vile from the driver, which appeared to contain
2  narcotics residue, and he was therefore going to conduct a search of the vehicle, Defendant was
3  asked to exit the vehicle. (*Id.* 2:16–19).

4  Officer Spurling informed Defendant that he was going to conduct the search and asked
5  Defendant again if he had any weapons. (*Id.* 2:19–21).  Defendant nodded his head "yes," but
6  stated "no." (*Id.* 2:21–24).  Once Defendant was outside of the vehicle, Officer Spurling
7  performed a pat-down search and escorted Defendant to the curb behind the vehicle. (*Id.* 3:3–
8  5).  Officer Spurling instructed Defendant to sit on the curb with his legs crossed in front of
9  him, and told him not to "feel like he needs to do anything stupid,". (*Id.* 3:5–7).  Both Officers
10 testified that Defendant was not free to leave at this time. (*Id.* 3:9–10).

11 Officer Spurling asked the driver who was seated on the curb next to the Defendant if
12 there were any drugs or guns in the vehicle, to which Defendant stated there was a weapon. (*Id.*
13 3:11–12).  Officer Spurling questioned Defendant about the type and ownership of the weapon,
14 and Defendant provided the requested information; Spurling placed Defendant in handcuffs.
15 (*Id.* 3:11–16).  Officer Spurling checked the car, found a gun, and then read Defendant his
16 *Miranda* rights. (*Id.* 3:16–20).  Defendant stated he understood his rights, and Officer Spurling
17 continued to question him concerning the gun. (*Id.* 4:1–5).  The Officers discovered the gun
18 was stolen and arrested Defendant. (*Id.* 4:6–8).

19 In his Motion to Suppress, Defendant seeks to suppress the statements he made prior to
20 and after the *Miranda* warning as a violation of *Miranda v. Arizona* and *Missouri v. Seibert*.
21 (Mot. to Suppress 1:19–21, ECF No. 17).  On November 9, 2016, Judge Ferenbach held an
22 evidentiary hearing, wherein both Officers Spurling and Donegan testified. (*See* ECF No. 30).
23 In the Report and Recommendation, Judge Ferenbach found that the "absence of a *Miranda*
24 warning during [Defendant's] initial custodial interrogation warrants the suppression of
25 [Defendant's] pre-warning statement." (R. & R. 8:19–21).

Additionally, Judge Ferenbach found that the post-warning statements should also be suppressed because the "lack of curative measures [by the Officers] renders [Defendant's] post-warning statements inadmissible." (*Id.* 14:24–25). As such, Judge Ferenbach recommended granting Defendant's Motion and suppressing all statements made after Defendant was seated on the curb. (*Id.* 15:1–5).

## II.     LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a de novo determination of those portions of the Report to which objections are made. *Id*. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

## III.    DISCUSSION

The Government asserts three objections to Judge Ferenbach's Report and Recommendation granting the Motion to Suppress. (Obj., ECF No. 37). First, the Government argues that Judge Ferenbach erred in finding that the Defendant was in custody when he made his pre-*Miranda* statements. (*Id.* 4:10–12). Second, the Government argues that Judge Ferenbach erred in finding that Officer Spurling used a deliberate two-step interrogation technique. (*Id.* 4:12). Third, the Government argues that Judge Ferenbach erred in finding that the *Miranda* warnings were not effective so as to render Defendant's statements inadmissible. (*Id.* 4:13–14). The objections will be addressed in turn.

**A. First Objection: Custody**

Having reviewed the record in this case, the Court agrees with the Government that Defendant was not in custody when he made his pre-*Miranda* statements. In the Report and Recommendation, Judge Ferenbach found that the language, the officer's tone, and the degree

of pressure applied all found in favor of Defendant being in custody. (R. & R. 5:11–8:16). Although he deemed the physical surroundings of the interrogation as neutral, and the duration of the detention was deemed against a finding of custody, Judge Ferenbach concluded that, based on the totality of the circumstances, a reasonable person in Defendant's position would have felt unable to terminate the encounter with the Officers and leave. (R. & R. 8:17–19).  The Government's objection with Judge Ferenbach's finding asserts that the Report and Recommendation did not address the "evidence of guilt" factor. (Obj. 12:15–17).

In the Ninth Circuit, the Court considers the following factors when considering a custody analysis: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013).  Moreover, "[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2009).

The first factor concerns the language the police officer used to summon the individual. The Ninth Circuit holds that an interrogation is non-custodial when the defendant "agreed to accompany" officers to the police station or to an interrogation room. *See United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc); *see also United States v. Norris*, 428 F.3d 907, 912 (9th Cir. 2005).  Here, Officer Spurling does not summon the Defendant for questioning.  He told Defendant to exit the car so that the car could be searched. (Obj. 8:12–13); *see* Body Camera Footage—Track 1 (hereinafter, "Track 1") at 00:30–02:37. Furthermore, the encounter between Officer Spurling and Defendant does not seem coerced or involuntary, as Officer Spurling's tone is polite and friendly, and Defendant is willing to cooperate. Track 1.  Defendant even talks about going to jail, to which Officer Spurling replies

that he is not going to take Defendant to jail. Track 1.  As such, the Court finds the language factor against custody.

As to the second factor, evidence of guilt, the Court agrees with the Government's Objection that the Report and Recommendation fails to address this factor.  The Ninth Circuit holds that a defendant is not in custody when the officers "did not attempt to challenge [the defendant's] statements with other 'known facts' suggesting his guilt, they merely asked [him] about the allegations." *United States v. Bassignani*, 575 F.3d 879, 884 (9th Cir. 2009). However, a defendant is in custody when the interrogator adopts an aggressive, coercive, and deceptive tone. *Id.*

Here, Officer Spurling did not confront Defendant about his guilt, and he maintained a friendly and polite tone throughout the interaction. Track 1.  Indeed, Officer Spurling asked numerous times whether there was a weapon in the car. *See id.*  However, "[p]olice officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056–57 (9th Cir. 1995) (citing *United States v. Jacobs*, 715 F.2d 1343, 1345–46 (9th Cir. 1983)).  Moreover, the Ninth Circuit holds that police officers can, within reason, search an area and question a suspect about the presence of weapons in that area for the officers' own safety. *United States v. Willis*, 431 F.3d 709, 717 (9th Cir. 2005).  As such, Officer's Spurling's questions concerning whether there was a weapon in the car are not analogous to confronting Defendant with evidence of his guilt.  The Court finds the second factor weighs against custody.

Regarding the third factor of physical surroundings, an interrogation conducted in familiar surroundings weighs against a finding that the defendant was in custody. *United States v. Eide*, 875 F.2d 1429, 1437 (9th Cir. 1989).  Conversely, "isolating the defendant from the outside world . . . largely neutralizes the familiarity of the location as a factor affirmatively undermining a finding of coercion." *Kim*, 292 F.3d at 977.  Here, the physical surroundings

constitute a public road and a sidewalk. Track 1. It is unclear as to Defendant's familiarity of the neighborhood, but the setting does not isolate him from the outside world. Accordingly, the Court finds that the third factor is neutral.

Regarding the fourth factor concerning the duration of the detention, the Court finds that the six-minute duration of the traffic stop weighs against custody. Because of the brevity of the interaction, the Court finds this factor against custody.

As to the fifth factor regarding the degree of pressure applied to detain Defendant, the Court finds that the degree of pressure Officer Spurling applied is against custody. The Ninth Circuit holds that "a defendant is not in custody when officers tell him that he is not under arrest and is free to leave at any time." *United States v. Bassignani*, 575 F.3d 879, 886 (9th Cir. 2009). Additionally, "[t]he *Miranda* test for custody does not ask whether the suspect was *told* that he was free to leave; the test asks whether 'a reasonable person [would] have *felt* he or she was not at liberty to terminate the interrogation and leave.'" *United States v. Craighead*, 539 F.3d 1073, 1088 (9th Cir. 2008) (emphasis in original).

Here, although Officer Spurling told Defendant he did not want him to do anything stupid, Officer Spurling also stated multiple times that Defendant was not going to go to jail. Track 1. Moreover, Officer Spurling's instructions for Defendant were for the purpose of the Officers' safety during the vehicle search. *Id.* Officers Spurling and Donegan testified at the evidentiary hearing that they would have chased after Defendant if he tried to escape. (R. & R. 3:9–10). However, that alone does not mean that Defendant was in custody pursuant to this factor. Although a reasonable person in Defendant's circumstance would not have felt that he or she was at liberty to terminate the encounter and leave, the Ninth Circuit holds that police may detain a suspect "whom the officers have reasonable suspicion has committed, is committing, or is about to commit a crime" without the suspect being in custody. *See United States v. Williams*, 837 F.3d 1016, 1023 (9th Cir. 2016) (demonstrating that although police

officers ran after a person when he tried to escape detention, chasing after the suspect does not necessarily mean the suspect was previously in custody).

Defendant's situation is analogous to a lesser detention, like in *Williams*, 837 F.3d 1016 (9th Cir. 2016), rather than custody. Additionally, the stop was not police dominated, the Officers did not brandish their firearms, and the Officers did not make aggressive movements rendering this traffic stop overtly intimidating. *See Berkemer v. McCarty*, 468 U.S. 420, 438–39 (1984) ("[T]he atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself, and in the subsequent cases in which we have applied *Miranda*."); *see also United States v. St. Germain*, 107 Fed. Appx. 91, 93–94 (9th Cir. 2004) (holding that although officers were uniformed and armed, the fact that they did not brandish their firearms or make intimidating movements weighs the fifth factor against a finding of custody).  As such, the Court finds the fifth factor against custody.

Although, Defendant's situation falls within the "twilight zone" between detention and custody, the Court finds that the pre-*Miranda* statements Defendant made were in response to questions more akin to permissible, routine traffic stop inquiries rather than an impermissible custodial interrogation. *See* <u>United States v. Butler, 249 F.3d 1094, 1099 (9th Cir. 2001) (deeming that the "twilight zone" is a situation greater than detention, but less than custody, and therefore does not require a *Miranda* warning); *see also id.* at 1098 ("A traffic stop is not custody.").</u>  Accordingly, given the totality of circumstances weighing against Defendant being in custody, the Court agrees with the Government's objection and finds that Defendant was not in custody prior to the *Miranda* warning.

**B.  Second Objection: Two-Step Interrogation Technique**

Regarding the second objection, the Court agrees with the Government that Officer Spurling did not use a deliberate two-step interrogation technique.  "[W]here law enforcement

officers deliberately employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a *reasonable person* in the suspect's shoes of his rights, the trial court should suppress the confession." *United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006) (citing *Missouri v. Seibert*, 542 U.S. 600 (2004)) (emphasis in original). Specifically, "[a] two-step interrogation involves eliciting an unwarned confession, administering the *Miranda* warnings and obtaining a waiver of *Miranda* rights, and then eliciting a repeated confession." *United States v. Narvaez-Gomez*, 489 F.3d 970, 973-74 (9th Cir. 2007).

Here, Officer Spurling's questioning was fairly brief and informal, to the point of friendly in nature. Track 1. Moreover, the questioning did not seem to resemble an interrogation.*Id.* Pursuant to Track 1, Officer Spurling inquired about the existence of other drug paraphernalia and weapons in the car. After Defendant provided Officer Spurling the location of the gun and its type, Officer Spurling handcuffed Defendant, retrieved the gun, and gave Defendant a *Miranda* warning before asking Defendant more questions. Track 1. This sequence of events does not seem extreme or outside of protocol.

Moreover, Officer Spurling does not at any point seem like he is deliberately eliciting confessions rather than routinely checking for guns out of safety concerns. *See Miranda v. Arizona*, 384 U.S. 436, 477–478 (1966) (holding that a general on-the-scene questioning concerning the facts and circumstances surrounding a crime does not trigger *Miranda* warnings). Additionally, there is no evidence that the Officers planned to use a two-step interrogation technique or that they employed the technique. The Officers asked routine questions and reacted reasonably to the situation as it developed. There is no evidence that Defendant's preliminary statements were coerced or involuntary to imply the two-step process, and the Officers did not confront Defendant with incriminating information. *See, e.g.*, *Minton v. Almager*, 2010 WL 4705135, at *7 (C.D. Cal. May 12, 2010) (holding that where, at a traffic

stop, a defendant incriminatingly volunteered he had drugs after police asked if the vehicle had any contraband, the defendant was neither in custody, nor being interrogated, and a motion to suppress these statements would have been "baseless or futile").  As such, the Court finds that there was no deliberate two-step interrogation, and agrees with the Government's second objection.

### C. Third Objection: Effectiveness of *Miranda* Warnings

Regarding the third objection, the Court agrees with the Government that the midstream *Miranda* warnings were effective, thereby rendering Defendant's post-warning statements admissible.  "When an interrogator has deliberately employed the two-step strategy, *Seibert* requires the court then to evaluate the effectiveness of the midstream *Miranda* warning to determine whether the post-warning statement is admissible." *See Williams*, 435 F.3d at 1160.

However, if the two-step method is not deliberate, the post-warning statements are admissible if voluntarily made. *Seibert*, 542 U.S. at 609–610).  Additionally, if the pre-warning statement was voluntary, the post-warning confession is admissible unless it was involuntarily made despite the *Miranda* warning. Williams, 435 F.3d at 1154.  "[W]here a postwarning statement is voluntarily made, the 'warned confession should . . . be suppressed only if [the pre-warning statements] were involuntary, and any taint therefrom had not dissipated by the time [the suspect] was read the *Miranda* warnings.'" *Id.*  Additionally, *Miranda* is only necessary in circumstances involving "express questioning" or "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Here, the Court holds that Officer Spurling did not employ the two-step strategy, nor was there a deliberate plan to use this strategy.  Additionally, Defendant volunteered the information regarding the gun. *See* Oregon v. Elstad, 470 U.S. 298, 314 (1985) ("[A]bsent

deliberately *coercive* or *improper* tactics in obtaining an initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.") (emphasis added); *see also* Track 1.  Officer Spurling properly gave Defendant an effective *Miranda* warning.  As such, the Court agrees with the Government's third objection that the *Miranda* warning is effective and that the post-warning statements are admissible.

Accordingly, the Court denies the Report and Recommendation, (ECF No. 33), and denies Defendant's Motion to Suppress, (ECF No. 17).

## IV.         CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation, (ECF No. 33), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress, (ECF No. 17), is **DENIED.**

**DATED** this   12   day of January, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court